## A. E. WILDE, STATE EXAMINER v. ELOISE AMORETTI

(No. 1852; June 19, 1934; 33 Pac. (2d) 399)

The cause was submitted for plaintiff and appellant on the brief of *W. E. Hardin,* of Lander.

194

The cause was submitted for the defendant and re-
spondent on the brief of *G. J. Christie,* of Lander.

RINER, Justice.

The action below was brought in the District Court of Fremont County November 17, 1928, by the then State Examiner, A. L. Putnam. Before the case was tried January 7, 1933, William Reeves, having subsequently succeeded to the duties of that office, was substituted as plaintiff. Thereafter, the personnel having again changed in the office aforesaid, A. E. Wilde, the present plaintiff and appellant, came into the case by court order of substitution duly made on June 5, 1933. The judgment in question is here for review by direct appeal.

The petition in the district court was filed to recover on a promissory note signed by Eloise Amoretti, defendant and respondent, and, shortly summarized, alleged that Amoretti, Welty, Helmer and Company was a partnership, and on and prior to November 25, 1927, was engaged under that name as a firm in the banking business under the state law at Dubois, Fremont County, Wyoming; that on that date the firm became insolvent and the State Examiner took possession of its assets, and as such official, was entitled to receive and collect all debts and claims belonging to it. These allegations were followed by the usual averments descriptive of the note in suit which is one dated May 12, 1926, for the principal sum of $1000, due six months after date, payable at the firm's office in Dubois, with interest at 10% per annum, and 10% attorneys' fees in case of suit. A copy of the note was attached to and made a part of the pleading. It is then alleged that, though matured, the note has not been paid, except that there was credited thereon on December 9, 1926, the sum of $50, and on June 7, 1927, a like sum, both amounts being applied on interest, and on November 25, 1927, the sum of $8.50 was credited on the principal of the note. Judgment was asked for

$1,243.42, including principal, interest, and attorneys' fees.

The answer of the defendant, so far as material to be considered here, admitted the existence of the partnership aforesaid and its conduct of a banking business, as the petition alleged, but denied both that the firm was insolvent and that the State Examiner had authority or right, as such official, to take control of the business or to bring the action. The remaining allegations of the petition were also put in issue. The defendant further answering, alleged that at the request of the firm some time in 1915, she executed to it a promissory note for $1000 which was renewed from time to time, also, at the payee's request; that she never paid anything on said note, never received any consideration therefor, and "that same was executed and delivered solely for the accommodation of said bank." The plaintiff's reply was a general denial, except as to the answer's admissions.

The trial of the cause was to the court and it was disposed of by a general finding in favor of the defendant and against the plaintiff upon which judgment was entered that plaintiff take nothing by his action and that defendant recover her costs.

It is contended on behalf of the plaintiff that the promissory note in question is not an accommodation note and that, accordingly, the court erred in finding and giving judgment for the defendant. This necessarily raises a question of fact.

The only evidence upon the point adduced at the trial is as follows: Plaintiff produced the note which contains the words "for value received" and, after proving its execution by the defendant, offered it and it was received in evidence. After establishing its nonpayment, plaintiff rested its case. For the defense, the defendant testified in her own behalf that she never

received any consideration for the note; that her husband, Eugene Amoretti, one of the members of the firm, asked her if she would sign a note, and that she said she would if it was necessary to accommodate the bank, and that she signed the note and gave it to Mr. Helmer, and that the bank kept possession of it. On cross examination, she testified that she never paid anything on the note. To the question, "And any endorsements of payments on this note that may appear, were made without your authorization and without payment on your part?" she again responded, "I did not." Eugene Amoretti, called as a witness for the defendant, testified that he asked his wife if she would give the bank an accommodation note. Requested by counsel to state the circumstances of the execution and delivery of the instrument in question, he answered, "I asked my wife, Mrs. Amoretti, if she would give the bank an accommodation note. This note—it was given to help out a payment on the bank stock, we were a little short and after Mr. Helmer came to me and asked me if I thought Mrs. Amoretti would sign a note to help out on the deficit of the stock in the bank, of the amount that was necessary, that we had to have. I told him I would ask her and she told me that she would gladly do it if it was to help us out at the bank." To the question, "Do you know whether or not Mrs. Amoretti, the defendant in this case, ever received any consideration for this note?" he replied, "Not a dollar." The entire cross examination of this witness, a member of the firm, and the person who procured the execution and delivery of the note, is contained in the following three questions and answers:

"Q. As I understand it then, Mr. Amoretti, the bank was a little short of money, and this note was given to make up that shortage, is that true?

"A. Yes, short in the stock, or whatever it was, I don't remember.

"Q. Yes. Is it a fact that you had not paid for all of your shares in the bank, and that this was to make up for the balance that you owed or something?

"A. Not that way, no sir. It might be a part, but a very small part that we all owed, as I remember it.

"Q. But this was to enhance the assets of the Amoretti, Welty, Helmer & Company bank, and that is the purpose for which it was given?

"A. Yes, I would say so."

Thereupon, both parties rested and no further evidence was offered or received. It will be noted from the foregoing recital of the evidence that counsel and witnesses alike use the words "bank" and "firm" interchangeably.

In view of this state of the record, we fail to see how we can say that the general finding of the district court, made as aforesaid, was unsupported by substantial evidence. It is perfectly clear, as the record stands, that the defendant herself received no consideration for the note. The firm's records, in possession of the plaintiff, apparently failed to show that she received anything for the note either by credit given her account or otherwise, as they were not offered in evidence. It is far from clear, also, that Eugene Amoretti or any other member of the firm received a benefit in consequence of the delivery of this note to it, assuming that such fact if established would aid the plaintiff. 8 C. J. 260 states the law to be:

"Where a bill or note has been made, accepted, or indorsed for the benefit of one of the members of a firm, the firm, although purchasers for value before maturity, cannot maintain an action thereon against the accommodation party, because the position of the firm can be no better than that of the partner who is the accommodated party."

Amoretti says that it was not given to make up a share deficiency payment, but states only that, "It might be a part, but a very small part that we all owed," as he remembered it—whatever meaning may be attached to

that statement. He was not asked to explain it. He does say that the note was to enhance the assets of the bank—how or for what purpose is left to pure conjecture. It is not shown who made the alleged interest or other endorsements on the note, or who made the alleged payments. The defendant testifies she did not.

It is true that after the case was closed, plaintiff through his counsel, asked leave to amend the reply to accord with the proofs, by alleging that the defendant was estopped from setting up the note as one for accommodation because it was given for the purpose of enhancing the assets of the bank and was actually so used. This request was denied. Error was assigned on this ruling, but it does not seem to be argued, and, hence, must be regarded as waived. Automobile Insurance Co. v. Lloyd, 40 Wyo. 44, 273 Pac. 681, and cases therein cited. But even if this were not so, there is serious doubt whether reversible error could be predicated upon the ruling thus made. There was no proof of the insolvency of the firm, the State Examiner—so the record reads—being simply requested by the surviving members of the firm, Helmer having died, to take over the firm's assets for liquidation. There was no proof either that the State Examiner had been deceived relative to this note appearing in the firm's assets or that creditors, depositors, or any other persons dealing with the bank had been misled to their prejudice thereby. All the elements necessary to create an estoppel in the case against the defendant do not appear to be present. See Whitcher v. Waddell, 42 Wyo. 274, 292 Pac. 1091; and as pointed out, by the author of the note in 38 Harvard Law Review 239, entitled "Liability on a Note Given to a Bank as a Fictitious Asset," in conclusion:

"Thus it may be possible to support many of the cases on the doctrine of estoppel. But the limitations of the doctrine should not be ignored. Here it is

founded upon loss to creditors. Therefore, it should not be invoked in a suit by the bank. Nor should it be applied to the extent of the face value of the note where the caused loss is less. And finally, if there has been no caused loss, the suit should fail. The receiver sues to protect private rights, not to punish falsifiers." See, also, Hudson State Bank v. Richardson, 128 Kan. 238, 276 Pac. 815.

The judgment of the district court of Fremont county will, consequently, be affirmed.

*Affirmed.*

KIMBALL, Ch. J. and BLUME, J., concur.